UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA

------------------------------------------------------x
UNITED STATES OF AMERICA        :
                                :    DECLARATION
                                :
      -against-                  :    3:07-cr-00274-HEH-4
                                :
MICHAEL VICK, et. al.           :
------------------------------------------------------x

JAMES W. CROSBY, declares under the penalty of perjury that if called to testify in the above captioned matter he will say the following:

1. I have been recognized as an expert in canine aggression and behavior based on the following qualifications

    a. I am a Certified Pet Dog Trainer, certified by the Council for Certification of Pet Dog Trainers, certification number 1050863.

    b. I am a licensed evaluator for the American Kennel Club Canine Good Citizen program.

    c. I am registered with the American Temperament Testing Society as a temperament evaluator.

    d. I have been qualified and testified as an expert witness in the field of dog aggression in the state courts of Florida and Georgia.

    e. I have provided deposition testimony as an expert and had said testimony accepted in the United States Federal Court, District of Colorado.

    f. I have provided evaluation and consulting on dangerous dog cases in the states of Texas, Washington, Florida, Georgia, and New York.

  e.  I have consulted and advised on action and prosecution of animal abuse and aggression cases in criminal and civil proceedings in the states of Florida, Georgia, South Carolina, Alabama, Texas, West Virginia, New York, Washington, and Virginia, including hands-on evaluations of dogs involved in fatal human attacks.

  f.  I have extensive training in canine behavior, obedience training, canine behavior assessment, safe animal handling, behavior modification, and other related fields. A detailed list of training is listed on my Curriculum Vitae, attached to this document.

  g.  I have personally trained over one thousand dogs for companion obedience. I have also addressed specific behavior issues, including but not limited to aggression issues, in over two hundred dogs. A number of the dogs in each of these categories were "Pit Bulls".

  h.  I handled stressed, traumatized and aggressive dogs in a triage/rescue shelter under the aegis of the Muttshack Animal Rescue organization in New Orleans, Louisiana in the aftermath of Hurricane during which time over 1,200 animals passed through that shelter. Many of these dogs were "Pit Bulls" of vary origins. Many of these were confirmed or suspected fighting dogs. At this shelter I developed a safe handling program that has been adopted as standard in emergency shelters by the Louisiana State Animal Response Team. I also developed a protocol for the treatment and handling of disaster stressed dogs that I have since taught to several organizations including LSART.

  i.  I have given training seminars on aggressive dogs, canine behavior issues and dog attacks to groups such as the American Kennel Club/Canine Health Foundation, the Georgia Bar Association/Institute of Continuing Legal Education, and Animal Control agencies in Georgia and Louisiana. Other qualifications, experience and publication history are contained in my C.V.

2. As an expert in dog aggression and rehabilitation of aggressive and dangerous dogs, it is my opinion that the following protocol should be followed in order to insure an accurate assessment of the seized animals and to provide treatment and disposition of these animals based on the behavioral characteristics of the individual animals involved.

**EVALUATION**

3. Evaluation of these animals should be undertaken by someone meeting the following criteria:

    a. A certified dog trainer or behavior expert familiar with recognized training and behavior modification techniques.

    b. A person experienced and familiar with aggressive and/or dangerous dogs and with hands-on direct evaluation and retraining of such animals.

    c. A person trained and skilled in the evaluation of dogs regarding human interaction and receptivity to training, as accepted by industry standard evaluations such as the American Kennel Club Canine Good Citizen Program and the programs provided by the American Temperament Testing Society.

    d. A person directly experienced with those dogs classified as American Pit Bull Terriers, Staffordshire Terriers, or other mixes of breeds currently commonly known as "Pit Bulls".

    e. A person who has performed dangerous dog evaluations and assessments for official agencies and proceedings, and whose testimony has been accepted by those agencies or proceedings.

4. To be behaviorally consistent and standardized, individual evaluation of each dog involved should be conducted by the same person under reproducible conditions and using a

standardized testing sequence. This should include not only the initial assessment, but progressive assessment during training and treatment.

5. The assessment must include full, hands-on evaluations of the dogs and must include sufficient contact time with each animal. This assessment must be based on quantifiable behavioral objectives, must be scored/rated uniformly, and all assessments, evaluations and examination must be documented for review, preferably by video recording.

6. A dog which has been used in fighting cannot be evaluated in the noisy environment of a kennel surrounded by a chorus of barking dogs in open view cages over a period of just a few minutes. This environment is usually too stressful and almost guaranteed to provoke either fear or aggression in a dog which has been traumatized. As a result the outcome is almost predetermined. The dog react badly and will fail the temperament test and will be put to death.

7. Neither is simply facing two fighting dogs off in a closed area a reasonable predictor of future behavior. An aggressive display towards another dog in close proximity is a behavior that has been reinforced in these dogs prior to intervention. Such a display, initially, is almost guaranteed, and confirms nothing but the previous reinforcement of this behavior pattern.

8. Instead, a proper assessment must be conducted over a period of weeks during which

time the dog is progressively introduced to varying stimuli and is assessed and reassessed as he adjusts. Such assessment must address the following topics:

      a. Human interaction and display of human directed aggression.

      b. Acceptance of human-set boundaries and limits to behavior.

      c. Acceptance of behavioral modification and training input from humans.

        d        Decrease in animal directed aggressive display and acceptance of alternate, safely directed behavior.

9. Assessment must include full, hands-on evaluations of the dogs and must include sufficient contact time with each animal. The assessment must be based on quantifiable behavioral objectives, must be scored/rated uniformly, and all assessments, evaluations and examination must be documented for review, preferably by video recording.

## REHABILITATION

10. To be successful, a rehabilitation program must be firmly anchored by the type of assessment detailed above.

11. Each animal must have an individual behavior program established based on the strengths and deficits noted in the assessment. Again, the efforts, contact and observations of the behavior trainer/assessor must be documented for each dog.

12. Each individual program must have specific behavioral objectives. These objectives, specifics of which may vary from dog to dog, must include the following:

        a        Acceptance of humans without aggressive display or action.

        b        Acceptance of humane behavioral and management training, based on reinforcement of desired behaviors and replacement of undesired behavior with acceptable alternatives.

        c        Acceptance of human-determined behavioral boundaries and control.

        d        Decrease, with ultimate aim of elimination, of animal directed aggression.

## PROCESS

13. The process by which the above described goals should be achieved is as follows:

a. Obedience training. Each dog shall begin the process of learning these basic social skills; walk on a leash, sit, stay, and 'leave it' or disengage from a behavior on command.

b. Human socialization. Each dog shall be socialized with varying humans, under varying safe social situations, to assure positive and safe social interaction in a home or public environment.

c. Response to, and recovery from, sudden or novel stimuli should be observed, documented, and positively directed where needed.

d. Progressive animal desensitization. The subject dogs should be gradually introduced to other animals on a progressive schedule. The process for this desensitization will include the approach of another animal (initially a safe, trained control animal) to the point of indications of stress or initial aggressive response.

e. The subject animal should then be directed to an alternate, non-aggressive behavior (such as a quiet sit) and then have the alternate behavior reinforced. Upon successful calming and reinforcement of the appropriate response, the subject animal is then led away, releasing the tension causing stimulus. This is repeated over time, slowly decreasing the contact distance while repeatedly reinforcing the desired response.

## REEVALUATION

14. Each animal in this program should be reevaluated for consistency of behavior and response to treatment and training throughout the process. The reevaluations should be conducted in similar fashion to the initial evaluation, and should meet the initial standards for repeatability and cross-sample consistency.

## PLACEMENT/DISPOSITION

15. The goal of this program is to establish recommendations for appropriate placement or disposition of the animals to the Court. The potential disposition for each animal should include options for:

    a. Placement in foster/permanent adoptive homes without conditions

    b. Placement in foster/permanent adoptive homes with conditions such as adopter experience, physical abilities and containment, etc.

    c. Short term sheltering for further training and treatment

    d. Long term secure sheltering

    e. Euthanasia.

16. Any/all placements must be screened to assure that the placement appropriate to the individual dog. Conditions such as adopter experience with large and powerful breeds, adopter physical ability, family structure and physical facilities available (such as living space) must be considered in placement.

17. All adopters involved in receiving animals from this case should be required to complete a training program tailored for the issues observed in these individual animals. Adopters should then be required to pursue additional appropriate training on their own.

18. All animals involved in this program should be followed by a responsible agency, with follow-up assessment done at a future time to insure the appropriateness of any placement.

19. Animals under long term sheltering should also be followed, and may be reevaluated for placement as their behavior changes over time.

20. Animals in short term training/sheltering should be reevaluated by competent party before the Court adoption or other placement.

September 2, 2007

                                                             JAMES W. CROSBY